## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHAWN L. ROBINSON, | : | |
| Plaintiff, | : | CASE NO. 3:22-cv-1471 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, et al., | : | |
| Defendants. | : | NOVEMBER 6, 2023 |
| | : | |

---

### INITIAL REVIEW ORDER

Plaintiff Shawn L. Robinson, incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this case under 42 U.S.C. § 1983 naming twenty-eight defendants and asserting federal claims generally described as "abusive inhumane maltreatment and denial of needed medical care" in violation of the Eighth Amendment, "conspiratorial racial discrimination and persecution for fundamental religious beliefs" in violation of the First and Fourteenth Amendments, and confinement in segregation in violation of the Due Process Clause. ECF No. 1 at 1. On July 26, 2023, the Court noted that the plaintiff did not mention any defendant by name in the body of the complaint or attribute any actions to a particular defendant or defendants. ECF No. 13. The Court ordered the plaintiff to file an amended complaint specifying the actions of each defendant for each claim. *Id.* at 5. The plaintiff has filed an amended complaint listing only one defendant, Angel Quiros, in the case caption and asserting claims covering the period from 2014 through 2019. Although the Court noted that the plaintiff failed to request any relief in the original complaint, he did not correct this deficiency in the

amended complaint.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

As an initial matter, the Court must identify the defendants in the amended complaint. The plaintiff lists the defendants in the case caption as "Angel Quiros, et al." He includes no section in the amended complaint listing the parties. Federal Rule of Civil Procedure 10(a) provides that "the title of the complaint must name all parties." However, it is not clear that this requirement also applies to amended complaints. Courts within this circuit are split on the issue. *See, e.g., Dominique v. Zylowski*, No. 03-5406(JS)(ARL), 2006 WL 8441027, at *1 & n.1 (E.D.N.Y. June 30, 2006) (amended complaint named only one defendant even though caption included "et al." and amended complaint referred to "Defendants"). *But see, e.g., Johnson v. Gonzalez*, No. 3:21-cv-585(CSH), 2023 WL 2770684, at *1 n.1 (D. Conn. Apr. 4, 2023) (noting that the caption of the amended complaint used "et al." rather than listing all defendants, but stating that the "Court will not at this time resolve the issue of whether Plaintiff has properly named [certain entities and individuals] in the caption, but will reserve decision on that question" for a ruling on a motion to dismiss); *Evans v. Port Authority of New York & New Jersey*, No., 2003 WL 21554561, at *1 (S.D.N.Y. July 10, 2003) ("The caption of the amended complaint

2

includes the abbreviation "et al." after the name of the defendant, thus implying that there was more than one defendant.").

The failure to include a list of defendants in the amended complaint makes it unclear whether the plaintiff intends to proceed against persons listed as defendants in the complaint but who are not mentioned in the allegations of the amended complaint. *See, e.g., Boyle v. Paddock*, No. 7:07-CV-0084(TJM)(GJD), 2007 WL 781923, at *1 n.3 (N.D.N.Y. Mar. 13, 2007) ("et al." in caption of amended complaint and failure to assert allegations of wrongdoing against some persons named in complaint make it "unclear whether plaintiff wishes to proceed against these individuals"). The plaintiff refers to defendants Angel Quiros, Denise Dilworth, William Santiago, Henry Falcone, Karl Lewis, Nick Rodriguez, Scott Erfe, Kim Jones, Amondah Hannah, David Egan, William Murphy, Tolmie, Ramos, Felipe Lugo, Darren Chevalier, and Gregorio Robles in the body of the amended complaint. As the plaintiff was instructed to identify the actions of each defendant involved in his claims, the Court considers these sixteen persons, all of whom were included among the twenty-five defendants in the original complaint, to be the only intended defendants in the amended complaint. The Court reviews the claims against these individuals below.

I.    **Allegations**

While the Court does not set forth all of the facts alleged in the plaintiff's Amended Complaint (ECF No. 19), it summarizes his basic factual allegations here to give context to its ruling below. The plaintiff was placed on high security status in 2014, allegedly as a result of an escape from court in 1986. *Id.* ¶ 3. The plaintiff believes that defendants Dilworth and Lewis engineered this placement shortly after he settled a lawsuit and a few days after he filed a

grievance appeal against members of the classification committee. *Id.* ¶¶ 10-11.

On July 4, 2015, defendants Falcone, Dilworth, and Egan caused the plaintiff to be placed in restrictive housing on a false disciplinary charge and subjected to a body cavity search conducted by nonmedical staff. *Id.* ¶ 13. The plaintiff remained in restrictive housing, disciplinary report free, until September 10, 2019, when he was attacked by another inmate. *Id.* ¶ 19. The plaintiff was confined in restrictive housing at two correctional facilities and underwent multiple visual body cavity strip searches. *Id.* ¶ 31.

The plaintiff alleges that from 2014 through September 10, 2019, defendants Erfe, Quiros, Jones, Hannah, Rodriguez, Lugo, Lewis, Egan, and Dilworth repeatedly denied him high security reviews. *Id.* ¶ 20.

The plaintiff has been sanctioned with the loss of 1728 days of good time credit as a result of "bogus factitious trumped-up disciplinary reports." *Id.* ¶ 25. An additional 1038 days of good time credit has been withheld without any infraction. *Id.* ¶ 24. Although prior prison rules permitted the plaintiff to seek restoration of the good time credits, the defendants repeatedly extended the time he was required to remain free from any disciplinary reports to be eligible for restoration. *Id.* ¶¶ 26-29.

Defendants Erfe and Murphy confiscated the plaintiff's religious materials and rejected a publication from Minister Louis Farrakhan and the Nation of Islam allegedly for safety and security reasons. *Id.* ¶ 39. Defendant Hannah confiscated and rejected the plaintiff's Prison Legal News publication and legal materials allegedly as sexually explicit materials posing a threat to institutional security and facilitating criminal activity after articles critical of the Connecticut Department of Correction were published therein. *Id.* ¶ 40.

On November 13, 2019, defendants Egan, Tolmie, Hannah, Ramos, and Lugo permitted nonmedical staff to perform a body cavity search on the plaintiff at Garner Correctional Institution. *Id*. ¶ 42. Defendants Quiros, Hannah, Egan, Erfe, Murphy, Rodriguez, Ramos, and Tolmie were "directly present or fully aware of the brutal cavity strip search from personal observations," but did not intercede on his behalf. *Id*. ¶ 43. The plaintiff had not been accused of attempting to convey contraband and had not refused a visual body cavity search on that date. *Id*. ¶ 44. He was in restraints and fully cooperative. *Id*. ¶ 45. As a result of the search, the plaintiff suffered spinal, back, and neck injuries. *Id*. ¶ 46. The plaintiff had a pre-existing back injury from 1999 of which the defendants were aware. *Id*. ¶ 47. The plaintiff informed the officers of his back injury and offered to perform the standard strip search but the officers ignored him and proceeded with the search. *Id*. ¶ 48.

On November 18, 2019, defendants Chevalier, Robles, Rodriguez, Hannah, and Egan subjected the plaintiff to another physical body cavity search and transferred him to administrative segregation status at Northern Correctional Institution. *Id*. ¶ 49. The plaintiff was not offered the opportunity to undergo the standard visual strip search before this search was performed. *Id*. ¶ 50. No observer intervened to stop the search. *Id*. ¶ 53. Defendants Quiros, Robles, Chevalier, Rodriguez, and Murphy either were involved in or present during the search or later viewed video footage of the search. *Id*. ¶ 54. The plaintiff assumes that these searches were in retaliation for his grievance and lawsuits. *Id*. ¶ 51. The plaintiff alleges that his placement on administrative segregation status violated correctional directives and policies because it was not preceded by an "incident." *Id*. ¶ 55.

## II.     Discussion

5

The plaintiff states, in conclusory fashion, that "[t]hese incidents are mainly in retaliation for plaintiff's litigation and grievances against prison staff[] but are also surrounded by racism and a form of persecution for plaintiff's religion and egalitarian beliefs." ECF No. 19 ¶ 2. As the plaintiff was directed to identify defendants involved in each of his claims, the Court considers the amended complaint to assert only those claims for which the plaintiff complied with this order, namely, the 2014 placement on high security status, confiscation of publications, the 2015 search and placement in restrictive housing, the 2019 strip search, and the 2019 strip search and placement in administrative segregation status.

### A.  <u>Statute of Limitations</u>

Although the statute of limitations is ordinarily an affirmative defense, the district court may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers the plaintiff himself submitted. *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). The limitations period for filing a section 1983 action in Connecticut is three years. *See Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018).

As the Court previously noted, the plaintiff submitted with his complaint a letter dated November 9, 2022, stating that his mail would be processed the following day. Thus, the earliest he could have given the complaint to prison officials for mailing is November 9, 2022. *See Sides v. Paolano*, 782 F. App'x 49, 50 (2d Cir. 2019) ("Under the prison mailbox rule, a pro se prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court.") (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)). Thus, to be timely filed, the plaintiff's claims must have accrued within the three years prior to his filing the complaint, or

after November 9, 2019.

While federal courts look to state law to determine the applicable limitations period, federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues—and the statute of limitations begins to run—"when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). Thus, the Court must determine when the plaintiff possessed sufficient facts about the harm done to him that reasonable inquiry would reveal the cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). The Court "should look to 'the time of the ... act, not the point at which the *consequences* of the act become[] painful.'" *Coronado v. City of New York*, No. 11CV5188-LTS-HBP, 2014 WL 4746137, at *3 (S.D.N.Y. Sept. 24, 2014) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

The November 13, 2019 strip search and November 18, 2019 strip search and transfer to administrative segregation are the only incidents alleged to have occurred after November 9, 2019 so the plaintiff's claims relating to these incidents are timely filed. For all other claims, the Court must determine whether the limitations period may be equitably tolled.

Federal courts refer to state law for tolling rules. *Wallace*, 549 U.S. at 394. Thus, "'both statutory and common law rules' relating to tolling a statute of limitations apply to § 1983 causes of action." *Esposito v. Aldarondo*, No. 3:22-CV-00621-MPS, 2023 WL 2228412, at *3 (D. Conn. Feb. 24, 2023) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002)). In *Esposito*, the court determined that Order 7G, an executive order issued by Governor Lamont, tolled the limitations period from March 19, 2020 to March 1, 2021, the period the order was in

effect. *Id.* at *3-5 (citing cases). Tolling the limitations period for that time, any claims accruing after November 27, 2018 is timely filed.

The plaintiff specifically references in his amended complaint additional claims regarding placement on high security status, transfer to restrictive housing accompanied by a body cavity search, and confiscation of religious materials and mail. However, all these claims are time-barred. The plaintiff contends that he was improperly classified to high security status in 2014 and, on July 4, 2015, he was improperly sent to restrictive housing on false disciplinary charges and subjected to a body cavity search. As the plaintiff was aware of these incidents well before November 27, 2018, the claims are time-barred. Indeed, the plaintiff submits copies of grievances he filed demonstrating his awareness of the claims and his ability to pursue them,

The plaintiff provides no dates for his claims regarding confiscation and rejection of religious materials and publications and the rejection of Prison Legal News. However, he attaches to the amended complaint copies of his grievance and rejection notice for the religious publication. As these documents are dated in November 2015, this claim is time-barred. *See* ECF No. 19 at 64-66. Finally, the plaintiff submits the December 14, 2016 rejection notice for his copy of Prison Legal News. *See id.* at 66. Again, he was aware of this incident well before November 27, 2018 and, therefore, this claim is time-barred.

The claims regarding the 2014 placement on high security status, confiscation of publications, and the 2015 search and placement in restrictive housing are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as time-barred.[1]

---

[1] The plaintiff's time-barred claims challenge "discrete unlawful act[s]" and so may not benefit from tolling under the continuing violation doctrine. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d

### B. <u>Strip Search</u>

The plaintiff alleges that he was subjected to physical strip searches conducted by nonmedical staff twice in November 2019. The Second Circuit has identified three types of strip searches that implicate an inmate's right to bodily privacy:

> A "strip search," though an umbrella term[,] generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

*Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). These three searches are authorized under Department of Correction Administrative Directive 6.7 under certain circumstances. *See* Directive 6.7, sections 5-8, www.portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited September 21, 2023).[2] As the plaintiff alleges that the searches were physical and performed by nonmedical staff, the Court assumes that he is asserting a claim for an improper manual body cavity search.

Inmates retain a limited right to bodily privacy under the Fourth Amendment. *Harris*, 818 F.3d at 57. When considering such a claim, the court conducts a two-part inquiry. First, the court must determine whether the inmate has "exhibit[ed] an actual, subjective expectation of bodily privacy." *Id.* (citation and internal quotation marks omitted). Second, the court must evaluate the defendants' justification for the intrusion. *Id.* The Second Circuit held in *Harris*, that a visual body cavity search is a "serious invasion of privacy." *Id*. at 58 (quoting *Florence v. Board of*

---

Cir. 2009).

[2] The Court may take judicial notice of prison directives and matters of public record available on the Department of Correction website.  *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

*Chosen Freeholders*, 566 U.S. 318, 344-45 (2012) (Breyer, J., dissenting) (internal quotation marks omitted). The plaintiff alleges that he was subjected to manual body cavity searches, which are more intrusive. Thus, the Court assumes, for purposes of initial review, that the plaintiff had a subjective expectation of privacy.

Directive 6.7(8) provides that a manual body cavity search may be performed only by a medical professional under the supervision of a physician, only where there is a reasonable suspicion that the inmate is carrying contraband, and only when other reasonable, less intrusive means have been considered or employed. The plaintiff alleges that the searches were performed by nonmedical staff and that his requests to undergo a visual body cavity search were rejected. Although prison directives do not define the parameters of the Fourth Amendment, the Court considers these allegations sufficient to state a plausible Fourth Amendment claim against defendants Egan, Tolmie, Hannah, Ramos, and Lugo for the November 13, 2019 search and against defendants Chevalier, Robles, Rodriguez, Hannah, and Egan for the November 18, 2019 search. The plaintiff alleges that these defendants authorized and/or were present during the searches.

The plaintiff also alleges that defendants Quiros, Erfe, Murphy, and Rodriguez were aware of the November 13, 2019 search but did not intervene and that defendants Quiros and Murphy later viewed footage of the November 18, 2019 search. Information on the Department of Correction website shows that Quiros is the current Commissioner of Correction and was the warden at Northern Correctional Institution from 2009-2011, Erfe was the warden at Cheshire Correctional Institution from 2015-2019, Rodriguez was the warden at Northern Correctional Institution from 2017-2019, and Murphy was the warden at Robinson Correctional Institution

10

from 2017-2019. Thus, these defendants, whom the plaintiff does not allege ordered the searches, appear to be supervisory officials. As the Court previously advised the plaintiff, the Second Circuit requires that a plaintiff plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted). Knowledge that unconstitutional acts were occurring is insufficient to state a claim against a supervisor. *Id.* at 616-17 ("A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." (citation omitted)). As the plaintiff does not allege facts showing direct participation by the supervisory officials, the claims relating to the November 13, 2019 search against Quiros, Erfe, Murphy, and Rodriguez and the claims regarding to the November 18, 2019 search against Quiros and Murphy are dismissed under 28 U.S.C. § 1915A(b)(1).

### C.  Administrative Segregation

The plaintiff challenges his November 2019 placement on administrative segregation and the repeated denials of high security reviews as violating his Fourteenth Amendment right to due process.

To state a claim for violation of his right to procedural due process, the plaintiff must show that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court reexamined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause. *Id.* at 474. The Court explained that for prisoners, a liberty interest warranting due process protection "will generally be limited

11

to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In *Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998), the Second Circuit held that the *Sandin* analysis should be applied to determine whether placement in non-punitive administrative segregation implicated a protected liberty interest. *Id*. at 334-35. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due process claim regarding classification of inmates to a high security prison for non-disciplinary reasons. The Court applied the *Sandin* analysis to determine whether inmates had a liberty interest in avoiding indefinite confinement in the restrictive high security prison. *Id.* at 223 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484)).

Thus, regarding his classifications to administrative segregation and high security status, the plaintiff must allege facts showing that he had a protected liberty interest in remaining free from the classification and that the defendants deprived him of that interest without affording him due process. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The plaintiff alleges that his transfer to administrative segregation at the highest security prison was not precipitated by any incident. Although the plaintiff alleges no facts regarding the conditions of his confinement in administrative

12

segregation or the duration of his confinement, the Court considers the alleged conduct sufficiently egregious to warrant further development of the record.

The process required at a classification hearing is governed by *Hewitt v. Helms*, 459 U.S. 460 (1983), which requires "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Id.* at 476. The plaintiff alleges that he was placed on administrative segregation status with no notice or hearing. Thus, the Court will permit this claim to proceed against defendants Chevalier, Robles, Rodriguez, Hannah, and Egan for further development of the record.

Regarding the plaintiff's classification to high security status, his claim is that he did not receive required periodic reviews of his status. In considering a claim regarding periodic administrative segregation reviews, the Second Circuit has held that meaningful periodic reviews should satisfy three factors: "First, the reviewing prison officials must actually evaluate whether the inmate's continued [segregated] confinement is justified." *Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). "Second, the reviewing officials must evaluate whether the justification for [segregated placement] exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available." *Id.* at 611. Finally, "the reviewing officials must maintain institutional safety and security (or another valid administrative justification) as their guiding principles throughout an inmate's [segregated housing] term" *Id.*

Department of Correction Administrative Directive 9.4, section 10, governs classification to high security status. *See* www.protal.ct.gov/DOC/AD/AD-Chapter-9 (last visited September 21, 2023). Although the directive provides for periodic reviews, it does not require that the

13

inmate be present at or informed that a review will be conducted or even that he be informed of the results of the review. *See* Directive 9.4(10)(g). Thus, the plaintiff's assumption that reviews were not conducted because his status was not changed does not show that reviews were not conducted. This conclusory statement is insufficient to state a plausible claim that the required reviews were not conducted. This claim is dismissed under 28 U.S.C. § 1915A(b)(1).

### D.  **Retaliation**

The plaintiff contends that all of the alleged actions were taken in retaliation for grievances and lawsuits he filed. To establish a retaliation claim, the plaintiff must allege facts establishing three elements: (1) he engaged in protected speech or conduct, (2) the defendant took an adverse action against him, and (3) there was a causal connection between the protected speech and the adverse action. *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

Filing a lawsuit or grievance is protected activity that satisfies the first element. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). The Court considers being subjected to a manual strip search and transferred to administrative segregation sufficiently harsh to plausibly allege adverse action. Finally, the plaintiff alleges that he heard the defendants making "snide remarks about his settlement and lawsuit." ECF No. 19 ¶ 51. The Court will permit the plaintiff's retaliation claim to proceed for further development of the record.

### E.  **Good Time Credits**

Finally, the plaintiff contends that the defendants have withheld 1038 days of good time credit without imposing any disciplinary charges and have taken away an additional 1728 days of credit based on allegedly false disciplinary charges. He alleges that defendants Quiros, Hannah,

Rodriguez, and Jones refuse to comply with the procedures for restoration of the forfeited credits. ECF No. 19 ¶¶ 22-29. As the plaintiff includes no request for relief in the amended complaint, the Court cannot determine whether the plaintiff seeks damages or an order that his good time credit be restored.

However, "[b]ecause an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of ... physical confinement' and thus lies at 'the core of habeas corpus.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (internal citation omitted). Thus, any claim seeking restoration of good time credits cannot be asserted in a section 1983 action but must be pursued in a petition for writ of habeas corpus. If the plaintiff seeks damages for the failure to restore good time credits, his claim is not cognizable in a section 1983 action until he is successful in a state habeas action seeking to have the good time credits restored. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Thus, this claim is not cognizable in this section 1983 action and is dismissed under 28 U.S.C. § 1915A(b)(1).

### III.    Conclusion

The claims relating to the plaintiff's placement on high security status, the confiscation of his religious publication and mail, and the 2015 search and placement in restrictive housing are DISMISSED under 28 U.S.C. § 1915A(b)(1) as time-barred. The claims for denial of periodic high security status reviews and restoration of good time credits are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1). The plaintiff may pursue any claim for restoration of good time credits in a petition for writ of habeas corpus filed in state court.

The case will proceed on the Fourth Amendment claim regarding the November 13, 2019 strip search against defendants Egan, Tolmie, Hannah, Ramos, and Lugo, the Fourth Amendment claim regarding the November 18, 2019 strip search against defendants Chevalier, Robles, Rodriguez, Hannah, and Egan, the Fourteenth Amendment due process claim regarding the November 18, 2019 placement in administrative segregation against defendants Chevalier, Robles, Rodriguez, Hannah, and Egan, and the First Amendment retaliation claims against these same defendants.

The Clerk is requested to restore Nick Rodriguez, Amondah Hannah, David Egan, Tolmie, Ramos, Felipe Lugo, Darren Chevalier, and Gregorio Robles as defendants in this action.

The Court enters the following additional orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Nick Rodriguez, Amondah Hannah, David Egan, Tolmie, Ramos, Felipe Lugo, Darren Chevalier, and Gregorio Robles, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)    **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this  6th day of November 2023 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge

18